IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADRIAN EHREN KONECNY,                                  No. 2:18-cv-01385-HZ

           Plaintiff,                                              OPINION & ORDER

    v.

COLLETTE PETERS, BRIGITTE
AMSBERRY, DAVID PEDRO, TOM
LEMENS, SCOTT BROWN, TIMOTHY
HART, DEREK TURNER, LUCAS
FERGUSON,

           Defendants.

Franz Bruggemeier
OREGON JUSTICE RESOURCE CENTER
PO Box 5248
Portland, OR 97208

    Attorney for Plaintiff

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

    Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Adrian Ehren Konecny brings this § 1983 suit against Defendants Collette Peters, Brigitte Amsberry, David Pedro, Tom Lemens, Scott Brown, Timothy Hart, Derek Turner, and Lucas Ferguson. Defendants move for summary judgment arguing: (1) Plaintiff cannot establish an Eighth Amendment violation against Defendants Brown, Hart, and Ferguson; and (2) Defendants Peters, Amsberry, Pedro, and Lemens, ("the Supervisory Defendants") cannot be held liable under a theory of *respondeat superior*. Defendants also argue that Defendant Turner should be dismissed for failure to serve. For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

On March 10, 2018, in the Disciplinary Segregation Unit ("DSU") at Eastern Oregon Correctional Institution ("EOCI"), officers used OC/CS spray to extract an inmate from his cell. Brown Decl. ¶ 5. Plaintiff was in a cell across the hall and ten feet down the tier. *Id.* at ¶ 7. Plaintiff felt the effects of the spray soon after it was deployed. He began coughing and gagging, and he felt like his throat was going to close. Bruggemeir Decl. Ex. 1 (Konecny Dep.) 32:19-33:8. His eyes watered, and his skin burned and itched. *Id.* The severe effects lasted thirty minutes, and he continued to have a sore throat for the next three days. *Id.* at 34:20-25, 43:21-44:25. Plaintiff also recalls Defendant Brown coughing and gagging from the spray when he was on the tier. *Id.* at 39:14-25.

After the extraction, several inmates—including Plaintiff—requested a shower as Defendant Brown walked the tier. Brown Decl. ¶ 8; Bruggemeir Decl. Ex. 1 (Konecny Dep.). 43:4-6. Plaintiff also asked Defendants Ferguson and Hart for a shower. Bruggemeir Decl. Ex. 1 (Konecny Dep.) 62:15-64:3. Defendants Hart and Ferguson failed to stop and listen to his

complaints. *Id.* at 62:15-64:14. Defendant Brown told them to use soap, water, and towels to decontaminate and discussed the requests with the Lieutenant on duty that night. Brown Decl. ¶ 8. They agreed to offer the inmates extra towels in lieu of showers. *Id.* at ¶ 8. According to Defendant Brown, none of the inmates complaining of secondary exposure sought medical treatment or exhibited symptoms of being adversely effected by their exposure. *Id.* at ¶¶ 8-9. Plaintiff was not offered any other decontamination until the next day, when he was taken outside for his regularly-scheduled yard time and offered a shower. Bruggemeier Decl. Ex. 1 (Konecny Dep.) 46:1-25; TAC ¶ 23. Plaintiff was provided clean clothes three days after the incident. Bruggemeier Decl. Ex. 1 (Konecny Dep.) 46:14-47:1.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against Defendants Brown, Hart, and Ferguson, and on Plaintiff's supervisory liability claims against the "Supervisory Defendants". Plaintiff concedes that Defendant Turner should be dismissed from this action. Pl. Resp. 1 n.1. The Court addresses each of Plaintiff's claims against the remaining Defendants in turn.

///

///

I.  **Deliberate Indifference**

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted)

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

There is a dispute of fact as to whether Defendants Brown, Hart, and Ferguson were deliberately indifferent to Plaintiff's medical needs. Defendants submit some evidence to suggest

that Defendants Hart and Ferguson did not interact with Plaintiff after the extraction was complete and that Plaintiff did not ask them for further decontamination. Hart Decl. ¶ 7; Ferguson Decl. ¶ 7.  But all three Defendant conducted tier checks that evening, Brown Decl. ¶ 8; Hart Decl. ¶ 7; Ferguson Decl. ¶ 7, and Plaintiff testified that he requested a shower, fresh air, and new clothing from the officers who walked the tier, Bruggemeier Decl. (Konecny Dep.); 39:14-25, 43:4-6, 62:15-64:17; *see also* Brown Decl. ¶ 8 (several individuals requested showers). Plaintiff did not receive fresh air or a shower until the next day. *Id.* at 46:1-4, 46:14-47:1; TAC ¶ 23. Thus, a reasonable jury could conclude that Defendants Brown, Hart, and Ferguson were aware of Plaintiff's risk of harm and yet failed to provide Plaintiff with adequate decontamination in the period following the deployment of chemical agents. *See Clement*, 298 F.3d at 905 ("In this case, the prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4-hour period."). Accordingly, Defendants may be liable for deliberate indifference.

Defendants also emphasize the competing concerns faced by Defendants that evening in assembling and participating in the extraction team. Def. Mot. 16. But whether these concerns are relevant to Defendants' subjective intent is for the jury to decide, particularly as the extraction was complete before Plaintiff sought decontamination and many hours before Plaintiff was given fresh air and a shower. *Clement*, 298 F.3d at 905 (finding that the plaintiffs might "be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4-hour period"). Because a

reasonable jury could conclude that Defendants knew of the risk of harm to Plaintiff and yet delayed decontamination, they may be liable for deliberate indifference.[1]

## II. Supervisory Liability

"[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisory may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a

---

[1] Defendants also argue that they are entitled to qualified immunity on this claim, arguing Plaintiff has not demonstrated that Defendants violated Plaintiff's Eighth Amendment rights. Def. Mot. 19. Because this argument is duplicative of the Court's analysis regarding the merits of Plaintiff's Eighth Amendment claim, the Court declines to address it separately.

7 – OPINION & ORDER

policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Turning first to Defendants Lemens and Pedro, Plaintiff argues that these individuals are liable as Assistant Superintendents of EOCI in charge of the supervision of other EOCI officials. Pl. Br. 27. But there is no evidence in the record from which to infer that Defendants knew or should have known about the issues with improper decontamination or whether they were responsible for training, policymaking, or the discipline of EOCI officials. Thus, Plaintiff has not demonstrated a causal link between the action or inaction of Defendants Lemens and Pedro and his injury. Accordingly, Defendants Lemens and Pedro are dismissed from this case.

Second, the evidence does not demonstrate that Defendant Peters is liable. Defendant Peters has policymaking responsibilities related to the safekeeping of prisoners, Pl. Resp. 24 (citing Or. Rev. Stat. § 423.075(5)(d)), and she admitted that she had knowledge of both formal and informal complaints from inmates that officers took too long to provide showers to inmates who had been directly exposed to chemical agents, Bruggemeier Decl. Ex. 3 (RFA 4, 5). Defendant Peters was also a named defendant in a handful of prisoner civil rights cases alleging improper decontamination after direct and indirect exposure to chemical agents while housed at Snake River correctional Institution. *See* Pl. Resp. 25, 28. But even viewing the facts in the light most favorable to Plaintiff, knowledge of inadequate decontamination after indirect exposure at a different ODOC facility does not establish that Defendant Peters was on notice that ODOC procedures, policies, or training for decontamination after secondary exposure were inadequate or unconstitutional at EOCI. *See Clement*, 298 F.3d at 905 (where inmates recited "numerous

instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates" the court concluded that a factfinder could find that policymakers were on "actual or constructive notice of the need to train" (quotations omitted)).

Finally, Defendants are also entitled to summary judgment on the claim against Defendant Amsberry. Plaintiff cites evidence that Defendant Amsberry believed that prison policy did not require a shower for inmates who were indirectly exposed to chemical agents. Bruggemeier Decl. Ex. 16 (Response to Interrogatories 1, 2). But there is no evidence in the record as to the responsibilities or authority of Defendant Amsberry in her role as the Superintendent of EOCI. Without this evidence, no reasonable jury could find that her actions, inactions, or acquiescence to a policy could be the moving force behind Plaintiff's injury. Accordingly, the claim against Defendant Amsberry is dismissed.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment [54]. Defendants Peters, Amsberry, Pedro, Lemens, and Turner are dismissed from this case.

IT IS SO ORDERED.

DATED:    March 29, 2021        .


_____
MARCO A. HERNÁNDEZ
United States District Judge

9 – OPINION & ORDER